**EXHIBIT 1**

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH 03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

FOR SERVICE

## SUMMONS IN A CIVIL ACTION

Case Name: **Patricia Hall-Cloutier v SIG SAUER, Inc.**
Case Number: **218-2017-CV-01036**

Date Complaint Filed: September 11, 2017

A Complaint has been filed against SIG SAUER, Inc. in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| October 28, 2017 | Patricia Hall-Cloutier shall have this Summons and the attached Complaint served upon SIG SAUER, Inc. by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| November 18, 2017 | Patricia Hall-Cloutier shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | SIG SAUER, Inc. must file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to SIG SAUER, Inc.:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  John P. Sherman, ESQ

Sherman Law PLLC
155 Fleet Street
Portsmouth NH 03801

BY ORDER OF THE COURT

September 13, 2017

Maureen F. O'Neil
Clerk of Court

(504)

STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY                                                                                  SUPERIOR COURT

Patricia Hall-Cloutier
231 Long Hill Road
Dover, NH 03820

v.

SIG SAUER Inc.
72 Pease Boulevard
Newington, NH 03801

## COMPLAINT AND JURY DEMAND

## PARTIES

1. Patricia Hall-Cloutier ("Ms. Hall") is an individual residing at 231 Long Hill Road, Dover, New Hampshire.

2. Defendant SIG SAUER Inc. ("SIG") is a Delaware corporation registered to do business in New Hampshire with a principal address at 72 Pease Boulevard, Newington, New Hampshire.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to RSA 491:7.

4. Venue is proper pursuant to RSA 507:9.

## FACTS RELEVANT TO ALL COUNTS

5. Ms. Hall has extensive experience with the laws and procedures relating to the import/export of controlled firearms.

6. On or about September 15, 2015, SIG hired Ms. Hall as the Director of Import/Export Compliance.

*No Discipline*

1

7. Ms. Hall performed her job duties satisfactorily.

8. She was not the subject of any discipline pursuant to SIG's disciplinary policies.

### *Recent Raise and Bonus*

9. In February 2017 Ms. Hall received a performance-based raise.

10. On May 11, 2017 Ms. Hall received a raise.

### *Intentional Violation of Federal Controlled Weapons Export Laws*

11. Throughout the course of her employment, Ms. Hall identified and reported instances in which documentation regarding the export of SIG weapons violated applicable United States laws regarding export license applications, agreements, and regulations.

12. One particularly noteworthy instance of such a violation happened on or about June 1, 2017.

13. Ms. Hall discovered that someone within SIG's Sales Department changed the identified recipient of a shipment of controlled weapons, as identified by the National Firearms Act.

14. Ms. Hall was able to confirm that someone at SIG removed the automatically generated Oracle invoice from the documents package and substituted a manually created invoice that identified a different end-user than the end-user identified on the export license that Congress, the State Department (DOS-DDTC), and the ATF approved.

15. Ms. Hall confirmed that this happened by comparing available documentation regarding the shipment – including a comparison of the approved export license authorization with the documents sent to the freight forwarder.

16. Upon discovering the end-user change, she also communicated directly with the freight forwarder which advised that the end-user the Sales Department had identified was the

end-user on the documents they received.

### *Sales Department Admitted Changing End-User*

17.     Ms. Hall then discovered that the Sales Department did *not* send the freight forwarder all of the usual required documents.

18.     Instead, it omitted several of the required ones that would have had the correct end-user *and* substituted the manually created invoice identifying the new end-user.

19.     Upon information and belief, the Sales Department communicated with the freight forwarder in this way to conceal that it changed the end-user.

20.     When asked how it happened that he did not send the freight forwarder all of the usually required and forwarded documents, the Sales Department representative advised that he had "forgotten to send all of them."

21.     This was an intentional misrepresentation.

22.     When asked why the end-user was changed, the Sales person advised that the new name of the end-user was the "Indonesian way of spelling Ministry of Defense."

23.     When asked why the address for the end-user—in addition to the spelling of the name—also was changed, the Sales person initially had no response.  Another individual present then claimed, however, that he received "an email from the agent for the customer who directed that the shipment needed to go to the new address."

24.     This was an intentional misrepresentation.

25.     Ms. Hall asked to the see the email.

26.     The Sales employee was unable to produce it.

27.     Ms. Hall asked that he send it to her.

28.     She never received it.

3

29. Ms. Hall then addressed this directly with the International Logistics Manager. He, too, identified that he had not received the full set of usual shipping documents from the Sales Department.

30. This action of changing the end-user on an export shipment of controlled weapons directly violated federal law including, but not limited to, the export license authorization, applicable ATF regulations, State Department statutes and regulations, Commerce Department statutes and regulations, US Customs and Border Protection statutes and regulations, and, upon information and belief, the Foreign Corrupt Practices Act (FCPA).

### *Direct Report to Mr. Shawver*

31. On or about June 1, 2017, Ms. Hall reported what she learned directly to her supervisor Mr. Shawver.

32. Specifically, she reported that she learned of SIG employees who appeared to have intentionally violated federal export laws regarding the shipment of controlled weapons to a foreign country.

33. Mr. Shawver responded, "it is exporting 101 that you do not change the end-user on a shipment."

34. This was a reference to requirements within federal statutes and regulations requiring that exports be shipped to the end-user identified on the export license.

35. He asked Ms. Hall about the status of the shipment.

36. She advised that part of it was still in the country and the rest was already in the air. She advised that she was working with the freight forwarder to correct the filing in the ACE system so that end-user to receive the shipment was the actual one listed on the export license authorization and *not* the one identified on the manually created invoice.

37. The conversation with Mr. Shawver ended with his comment "it sounds like we need to have an investigation here."

*Follow-up With Freight Forwarder on June 5, 2017*

38. Mr. Shawver was out of the office the next few days on vacation.

39. On Monday June 5, 2017 Ms. Hall emailed the freight forwarder for further information regarding this shipment. She requested Proof of Delivery reflecting that the shipment was sent to the correct end-user – the one identified on the export license authorization – and *not* the one on the manual invoice.

40. She spoke directly with the freight forwarder advising that she would require this information as there was going to be an investigation regarding the shipment.

41. The representative advised that providing such a proof of delivery would "take some time."

*No Mention During Morning Communication - June 6, 2017*

42. Mr. Shawver was scheduled to return to work on Tuesday, June 6, 2017.

43. That morning, he called Ms. Hall to advise that he had a late-night flight the night before and would be in the office later in the morning or early afternoon.

44. Mr. Shawver asked Ms. Hall questions about a Chinese toolmaker and its involvement with one of SIG's Israeli suppliers.

45. Ms. Hall notified Mr. Shawver that a meeting was scheduled for that Thursday to address issues surrounding this supplier and the export violation of technical data to China and a violation of the manufacturing licensing agreement issued by DDTC.

*FMLA Leave Reminder*

46. Ms. Hall reminded Mr. Shawver during this early morning June 6th

5

communication that she would be out of the office that afternoon to attend her mother's oncology appointment.

47.     Ms. Shawver and others at SIG were well aware of her mother's serious health problems *and* Ms. Hall's need to assist in caring for her.  Previously, Ms. Hall had taken leave using her accrued vacation and personal time to care for her mother and as recently as April 2017 had notified SIG that she would require FMLA leave throughout 2017 to care for her mother especially following her anticipated third surgery in May.

### *Sudden Notice of Termination*

48.     While working in the office that morning Ms. Hall did not see Mr. Shawver.

49.     Shortly before she was scheduled to leave for her mother's doctor appointment, Ms. Hall received a call from Human Resources ("HR") asking that she attend a meeting.

50.     She went to HR where she observed Mr. Shawver, who appeared to have just arrived at work, standing next to the HR representative's desk.

51.     Mr. Shawver then advised Ms. Hall that there had been a "reorganization", that Ms. Hall's position had become "redundant", and that SIG was "letting her go."

52.     One of the security managers then escorted me from the building.

### LEGAL CLAIMS

### COUNT I
### Whistleblower Claim RSA 275-E

53.     Ms. Hall restates and incorporates by reference all allegations within this Complaint

54.     Ms. Hall engaged in activity protected by the Whistleblower Statute when she made numerous good faith reports that she had reasonable cause to believe were a violation of United States law.  These instances included, but were not limited to, reporting numerous

6

instances of direct and apparently intentional violations of federal law including, but not limited to, the export license authorization, applicable ATF regulations, State Department statutes and regulations, Commerce Department statutes and regulations, US Customs and Border Protection statutes and regulations, and, upon information and belief, the Foreign Corrupt Practices Act (FCPA).

55. Thereafter, Ms. Hall was subjected to action that would dissuade a reasonable worker from reporting the legal violations when SIG terminated her employment.

56. There was a causal connection between Ms. Hall's protected activity and the adverse employment action.

57. As a direct and proximate result of the foregoing, Ms. Hall suffered damages and injury.

58. Ms. Hall demands judgment against defendant for all available damages by statute and common law including, but not limited to, pain and suffering, compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT II
### (Wrongful Termination)

59. Ms. Hall incorporates by reference all allegations within this Complaint.

60. At all times during her employment with defendant, Ms. Hall performed her duties with diligence and competence.

61. Ms. Hall engaged in protected activity under RSA 275-E by notifying her employer of numerous violations of federal export laws, violation of company policies, her investigation regarding these violations, the responses that employees provided, the names of

the individuals involved in the activity, and her belief that the actions may and were likely to result in harm to the SIG SAUER. Ms. Hall also engaged in protected activity by availing herself of FMLA leave rights and benefits.

62. Defendant terminated Ms. Hall's employment because she engaged in protected activity under RSA 275-E and/or the FMLA.

63. Defendant's decision was motivated by bad faith, malice, or retaliation.

64. As a direct and proximate result of the foregoing, Ms. Hall suffered damages.

65. Ms. Hall demands judgment against defendant, including, but not limited to compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT III
### (FMLA Retaliation)

66. The plaintiff incorporates by reference all allegations within this Complaint.

67. Ms. Hall engaged in statutorily protected conduct by requesting FMLA leave.

68. Defendant terminated Ms. Hall's employment because of Ms. Hall's exercise of her protected rights.

69. Defendant's termination of Ms. Hall's employment, therefore, was causally related to her engaging in protected activity.

70. Ms. Hall demands judgment against defendant including, but not limited, backpay, frontpay, compensatory damages, enhanced compensatory damages, and attorneys fees, together with interest and costs and such other and further relief as this Court deems proper.

8

**JURY DEMAND**

71. Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted,

PATRICIA HALL-CLOUTIER

By her attorneys,

SHERMAN LAW, PLLC

Dated: 8/10/2017

John P. Sherman, Bar No. 12536
Sherman Law, PLLC
155 Fleet Street
Portsmouth, NH 03801
(603) 570-4837

9

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: Rockingham Superior Court

Case Name: Patricia Hall-Cloutier v. SIG SAUER, Inc.

Case Number: _____
(if known)

## APPEARANCE/WITHDRAWAL

### APPEARANCE
Type of appearance (Select One)

☑ Appearance  ☐ Limited Appearance *(Civil cases only)*

If limited appearance, scope of representation: _____

Select One:

☑ As Counsel for:
Patricia Hall          231 Long Hill Road, Dover, NH 03820
(Name)                 (Address)                              (Telephone Number)

(Name)                 (Address)                              (Telephone Number)

(Name)                 (Address)                              (Telephone Number)

☐ I will represent myself *(self-represented)*

### WITHDRAWAL
As Counsel for _____

Type of Representation: (Select one)

☐ Appearance:
  ☐ Notice of withdrawal was sent to my client(s) on: _____ at the following address: _____

  ☐ A motion to withdraw is being filed.

☐ Limited Appearance: (Select one)
  ☐ I am withdrawing my limited appearance as I have completed the terms of the limited representation.
  ☐ The terms of limited representation have not been completed. A motion to withdraw is being filed.

I certify that on this date I provided a copy of this document to the parties who have filed an appearance for this case by: ☐ Hand-delivery OR ☐ US Mail OR ☐ Email (only when there is prior agreement of the parties to use this method of service).

Date: 8/10/2017

Sherman Law, PLLC

Mailing Address: 155 Fleet Street, Portsmouth, NH 03801

603-570-4837

Telephone

Signature: John P. Sherman

Printed Name: jsherman@johnshermanlaw.com

Email Address: 12536

NH Bar ID # if attorney

NHJB-2318-S (03/24/2014)