# The State of New Hampshire

218-2017-CV-1036

Rockingham County

   I, Maureen F. O'Neil, Clerk of the Superior Court of the State of New Hampshire for the County of Rockingham, the same being a court of record having a seal, do hereby certify that I am the lawful custodian of the seal, files, records and proceedings of said Court, heretofore existing in said state and that I am the proper person to make out and certify copies thereof. And I further certify that I have attached copies of all pleadings and correspondence filed in this Court wherein Patricia Hall-Cloutier is Plaintiff and Sig Sauer, Inc is defendant.

   In witness whereof, I have hereunto set my hand and affirmed the seal Of said Superior Court this......19th.......day of ...October...........A.D...2018..........

_Maureen F. O'Neil_ Clerk



# CASE SUMMARY
## CASE NO. 218-2017-CV-01036

| Patricia Hall-Cloutier v SIG SAUER, Inc. | § § § § | Location: | Rockingham Superior Court |
|---|---|---|---|
| | | Judicial Officer: | Anderson, David A |
| | | Filed on: | 09/11/2017 |

---

### CASE INFORMATION

| | | |
|---|---|---|
| | Case Type: | **Tort-Wrongful Discharge** |
| | Case Status: | **10/19/2017 Closed** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Plaintiff** | **Hall-Cloutier, Patricia** | **Sherman, John P., ESQ** |
| | | *Retained* |
| | | 603-570-4837(W) |
| **Defendant** | **SIG SAUER, Inc.** | **Van Oot, Martha, ESQ** |
| | | *Retained* |
| | | 603-559-2700(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 09/11/2017 | Complaint - Civil | *Index #2* |
| 09/13/2017 | Summons on Complaint | *Index #3* |
| 09/13/2017 | **Service** | |
| | SIG SAUER, Inc.                    served 09/20/2017 | |
| 09/20/2017 | Service | |
| 09/25/2017 | Acceptance of Service | *Index #4* |
| | *fb Atty Debra Ford* | |
| 09/11/2017 | Appearance | *Index #1* |
| | Filed by: Attorney Sherman, John P., ESQ | |
| 10/18/2017 | Appearance | *Index #5* |
| | Filed by: Attorney Van Oot, Martha, ESQ | |
| 10/18/2017 | Other | *Index #6* |
| | Filed by: Attorney Van Oot, Martha, ESQ | |
| | *Notice of Filing of Notice of Removal* | |
| 10/18/2017 | Notice-Removal to Federal Dist Ct | *Index #7* |
| | Filed by: Attorney Van Oot, Martha, ESQ | |
| 10/19/2017 | Other | *Index #8* |
| | *Copy of Clerks Certificate* | |
| 10/18/2017 | **Removed to Federal District Court** | |

---

| TARGET DATE | TIME STANDARDS |
|---|---|

*Printed on 10/19/2017 at 8:46 AM*



# jackson | lewis
Attorneys at Law

Jackson Lewis P.C.
100 International Drive
Suite 363
Portsmouth, New Hampshire 03801
Tel 603 559-2700
Fax 603 559-2701
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | GREENVILLE, SC | MONMOUTH COUNTY, NJ | RALEIGH, NC |
| ALBUQUERQUE, NM | HARTFORD, CT | MORRISTOWN, NJ | RAPID CITY, SD |
| ATLANTA, GA | HONOLULU, HI* | NEW ORLEANS, LA | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NEW YORK, NY | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | NORFOLK, VA | SALT LAKE CITY, UT |
| BIRMINGHAM, AL | JACKSONVILLE, FL | OMAHA, NE | SAN DIEGO, CA |
| BOSTON, MA | KANSAS CITY REGION | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| CHICAGO, IL | LAS VEGAS, NV | ORLANDO, FL | SAN JUAN, PR |
| CINCINNATI, OH | LONG ISLAND, NY | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | LOS ANGELES, CA | PHOENIX, AZ | ST. LOUIS, MO |
| DALLAS, TX | MADISON, WI | PITTSBURGH, PA | STAMFORD, CT |
| DAYTON, OH | MEMPHIS, TN | PORTLAND, OR | TAMPA, FL |
| DENVER, CO | MIAMI, FL | PORTSMOUTH, NH | WASHINGTON, DC REGION |
| DETROIT, MI | MILWAUKEE, WI | PROVIDENCE, RI | WHITE PLAINS, NY |
| GRAND RAPIDS, MI | MINNEAPOLIS, MN | | |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

MARTHA VAN OOT
DIRECT DIAL: 603.559.2735
MARTHA.VANOOT@JACKSONLEWIS.COM

October 16, 2017

Maureen F. O'Neil, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, NH 03848-1258

Re:  218-2017-CV-01036 Patricia Hall-Cloutier v SIG SAUER, Inc.

Dear Clerk O'Neil:

Enclosed for filing Defendants' Notice of Filing of Notice of Removal to the United States
District Court.

We would appreciate it if you would please provide us with a certified copy of your file in this
case.  Enclosed is our firm check in the amount of $15.00 to cover the fee for same.

As you know, pursuant to federal statute, the certified copy of the state court record must be filed
with the U.S. District Court within 14 days.  Therefore, I would appreciate it if you would have
your office to call or email our paralegal Irene Dumais (559.2704 (direct) or 559.2700 (main) or
irene.dumais@jacksonlewis.com) as soon as possible to advise her if there is any additional cost
so that we can arrange for payment.  Thank you very much for your assistance with this matter.

Sincerely,

Martha Van Oot

MVO:ijd

Enclosures

cc (w/enc):  John P. Sherman, Esq.



JACKSON LEWIS P.C.
PORTSMOUT  IMPRESS
100 INTERNATIONAL  .IVE, SUITE 363
PORTSMOUTH, NH 03801

2404

1-32/210 NY
-60560

DATE October 13, 2017

PAY TO THE
ORDER OF   Rockingham County Superior Court                    $ 15.00

Fifteen and 00/100                                            DOLLARS

Bank of America

ACH R/T 021000322

FOR Hall-Cloutier #405996 st ct rec              Victoria Oberlin

"002464" ":021000322: 4830169882 12"

October 16, 2017

Maureen F. O'Neil, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, NH 03848-1258

2017 OCT 18  A 10: 05
ROCKINGHAM
SUPERIOR COURT

Re:  218-2017-CV-01036 <u>Patricia Hall-Cloutier v SIG SAUER, Inc.</u>

Dear Clerk O'Neil:

Enclosed for filing Defendants' Notice of Filing of Notice of Removal to the United States
District Court.

We would appreciate it if you would please provide us with a certified copy of your file in this
case.  Enclosed is our firm check in the amount of $15.00 to cover the fee for same.

As you know, pursuant to federal statute, the certified copy of the state court record must be filed
with the U.S. District Court within 14 days.  Therefore, I would appreciate it if you would have
your office to call or email our paralegal Irene Dumais (559.2704 (direct) or 559.2700 (main) or
irene.dumais@jacksonlewis.com) as soon as possible to advise her if there is any additional cost
so that we can arrange for payment.  Thank you very much for your assistance with this matter.

Sincerely,

Martha Van Oot

MVO:ijd

Enclosures

cc (w/enc):    John P. Sherman, Esq.

# S| SHERMAN LAW

RECEIVED
ROCKINGHAM
SUPERIOR COURT

2017 SEP 25  A 9 41

September 22, 2017

Maureen F. O'Neil, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, NH 03848-1258

RE:     Patricia Hall-Cloutier v. SIG SAUER, Inc.
        Case No. 218-2017-cv-01036

Dear Clerk O'Neil:

Enclosed herewith please find the Summons and an Acceptance and Waiver of Service.

If you have any questions or require any additional information, please do not hesitate to contact me.

Thank you for your attention to this matter

Sincerely,

John P. Sherman

JPS/mph
Enclosures
cc:     Client

SHERMAN LAW, PLLC  |  155 FLEET STREET  |  PORTSMOUTH, NH 03801  |  PH. 603.570.4837  |  FX. 603.570.4848
EM. JSHERMAN@JOHNSHERMANLAW.COM  |  WWW.JOHNSHERMANLAW.COM
ADMITTED TO PRACTICE IN NEW HAMPSHIRE & MASSACHUSETTS

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH 03848-1258

September 13, 2017

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

**FILE COPY**

Case Name: **Patricia Hall-Cloutier v SIG SAUER, Inc.**
Case Number: **218-2017-CV-01036**

Dear Attorney Sherman:

Enclosed please find summons for service on the defendant.

Maureen F. O'Neil
Clerk of Court

(504)

C: John P. Sherman, ESQ

# S SHERMAN LAW

ROCKINGHAM
SUPERIOR COURT

2017 SEP 11  A  9 00

September 7, 2017

Maureen F. O'Neil, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, NH 03848-1258

RE:   Patricia Hall-Cloutier v. SIG SAUER, Inc.

Dear Clerk O'Neil:

Enclosed herewith please find an original and two (2) copies of the Complaint along with my Appearance.

Also enclosed is a check in the amount of $260.00 for the filing fee.

If you have any questions or require any additional information, please do not hesitate to contact me.

Thank you for your attention to this matter

Sincerely,

John P. Sherman

JPS/mph
Enclosures
cc:     Client

September 7, 2017

Maureen F. O'Neil, Clerk
Rockingham County Superior Court
P.O. Box 1258
Kingston, NH 03848-1258

RE:   Patricia Hall-Cloutier v. SIG SAUER, Inc.

Dear Clerk O'Neil:

Enclosed herewith please find an original and two (2) copies of the Complaint along with my Appearance.

Also enclosed is a check in the amount of $260.00 for the filing fee.

If you have any questions or require any additional information, please do not hesitate to contact me.

Thank you for your attention to this matter

Sincerely,

John P. Sherman

JPS/mph
Enclosures
cc:    Client

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Patricia Hall-Cloutier,

      Plaintiff

v.                                 Civil Case No.

SIG SAUER, Inc.,

      Defendant

## <u>NOTICE OF REMOVAL</u><br><u>AND DEMAND FOR JURY TRIAL</u>

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§1441 and 1446, Defendant

SIG SAUER, INC., by and through its attorneys, JACKSON LEWIS P.C., hereby removes this

action from the Superior Court of the State of New Hampshire, Rockingham County, to the

United States District Court for the District of New Hampshire. In support of this Notice of

Removal, Defendant states as follows:

      1.      By Complaint dated August 10, 2017 and filed on September 11, 2017 in the

Rockingham County Superior Court, Plaintiff Patricia Hall-Cloutier instituted a claim against

Defendant, Docket No. 218-2017-CV-01036.

      2.      In accordance with 28 U.S.C. § 1446(a), true and correct copies of the process,

pleadings, documents, and orders which have been served upon Defendant are attached hereto as

Exhibit 1. Certified copies of the same will be forwarded upon receipt of same from the

Rockingham County Superior Court.

      3.      Pursuant to 28 U.S.C. § 1446(a), this notice of removal is timely filed within

thirty (30) days of September 14, 2017, the date on which counsel for Defendant received the

Complaint, Summons and a request to accept and waive service from Plaintiff's counsel.

*7*

4.  Defendant has not served any answer or responsive pleading to the Complaint, nor made any appearance or argument before the state court.

5.  Removal is proper under 28 U.S.C. §1441(a) because the United States District Court for the District of New Hampshire has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 in that Plaintiff alleges employment retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq.*, as well as claims of wrongful termination and violation of the Whistleblower Protection Act under state law.

6.  Defendant submits this Notice without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pled claims upon which relief can be granted.

7.  As this action could have been commenced in this Court, removal is proper. 28 U.S.C. §1441(a). Furthermore, this Court may exercise supplemental jurisdiction over the Plaintiff's state law claims. See 28 U.S.C. §1367(a)

Respectfully Submitted,
SIG SAUER, INC.,
By its attorneys,
JACKSON LEWIS P.C.,

Date: October 16, 2017        By:     /s/Martha Van Oot
                                      Martha Van Oot, NHBA #963
                                      100 International Drive, Suite 363
                                      Portsmouth, NH 03801
                                      603.559.2700
                                      martha.vanoot@jacksonlewis.com

Certificate of Service

I hereby certify that the foregoing was this day served via Conventional Filing on: Maureen F. O'Neil, Clerk, Rockingham County Superior Court, P.O. Box 1258, Kingston, NH, 03848-1258 and counsel for Plaintiff: John P. Sherman, Esq., Sherman Law, PLLC, 155 Fleet Street, Portsmouth, NH, 03801.

Date: October 16, 2017              /s/Martha Van Oot
                                    Martha Van Oot

2

EXHIBIT 1

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

FOR SERVICE

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:      **Patricia Hall-Cloutier v SIG SAUER, Inc.**
Case Number:    **218-2017-CV-01036**

Date Complaint Filed: September 11, 2017
A Complaint has been filed against SIG SAUER, Inc. in this Court. A copy of the Complaint is attached.

### The Court ORDERS that ON OR BEFORE:

| | |
|---|---|
| October 28, 2017 | Patricia Hall-Cloutier shall have this Summons and the attached Complaint served upon SIG SAUER, Inc. by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| November 18, 2017 | Patricia Hall-Cloutier shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | SIG SAUER, Inc. must file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to SIG SAUER, Inc.:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  John P. Sherman, ESQ

Sherman Law PLLC
155 Fleet Street
Portsmouth NH  03801

BY ORDER OF THE COURT

September 13, 2017

Maureen F. O'Neil
Clerk of Court

(504)

## STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY                                    SUPERIOR COURT

Patricia Hall-Cloutier
231 Long Hill Road
Dover, NH 03820

v.

SIG SAUER Inc.
72 Pease Boulevard
Newington, NH 03801

### COMPLAINT AND JURY DEMAND

### PARTIES

1.       Patricia Hall-Cloutier ("Ms. Hall") is an individual residing at 231 Long Hill

Road, Dover, New Hampshire.

2.       Defendant SIG SAUER Inc. ("SIG") is a Delaware corporation registered to do

business in New Hampshire with a principal address at 72 Pease Boulevard, Newington, New

Hampshire.

### JURISDICTION AND VENUE

3.       The Court has jurisdiction over this matter pursuant to RSA 491:7.

4.       Venue is proper pursuant to RSA 507:9.

### FACTS RELEVANT TO ALL COUNTS

5.       Ms. Hall has extensive experience with the laws and procedures relating to the

import/export of controlled firearms.

6.       On or about September 15, 2015, SIG hired Ms. Hall as the Director of

Import/Export Compliance.

*No Discipline*

1

7.    Ms. Hall performed her job duties satisfactorily.

8.    She was not the subject of any discipline pursuant to SIG's disciplinary policies.

### Recent Raise and Bonus

9.    In February 2017 Ms. Hall received a performance-based raise.

10.    On May 11, 2017 Ms. Hall received a raise.

### Intentional Violation of Federal Controlled Weapons Export Laws

11.    Throughout the course of her employment, Ms. Hall identified and reported instances in which documentation regarding the export of SIG weapons violated applicable United States laws regarding export license applications, agreements, and regulations.

12.    One particularly noteworthy instance of such a violation happened on or about June 1, 2017.

13.    Ms. Hall discovered that someone within SIG's Sales Department changed the identified recipient of a shipment of controlled weapons, as identified by the National Firearms Act.

14.    Ms. Hall was able to confirm that someone at SIG removed the automatically generated Oracle invoice from the documents package and substituted a manually created invoice that identified a different end-user than the end-user identified on the export license that Congress, the State Department (DOS-DDTC), and the ATF approved.

15.    Ms. Hall confirmed that this happened by comparing available documentation regarding the shipment – including a comparison of the approved export license authorization with the documents sent to the freight forwarder.

16.    Upon discovering the end-user change, she also communicated directly with the freight forwarder which advised that the end-user the Sales Department had identified was the

2

end-user on the documents they received.

### *Sales Department Admitted Changing End-User*

17.   Ms. Hall then discovered that the Sales Department did *not* send the freight forwarder all of the usual required documents.

18.   Instead, it omitted several of the required ones that would have had the correct end-user *and* substituted the manually created invoice identifying the new end-user.

19.   Upon information and belief, the Sales Department communicated with the freight forwarder in this way to conceal that it changed the end-user.

20.   When asked how it happened that he did not send the freight forwarder all of the usually required and forwarded documents, the Sales Department representative advised that he had "forgotten to send all of them."

21.   This was an intentional misrepresentation.

22.   When asked why the end-user was changed, the Sales person advised that the new name of the end-user was the "Indonesian way of spelling Ministry of Defense."

23.   When asked why the address for the end-user—in addition to the spelling of the name—also was changed, the Sales person initially had no response.  Another individual present then claimed, however, that he received "an email from the agent for the customer who directed that the shipment needed to go to the new address."

24.   This was an intentional misrepresentation.

25.   Ms. Hall asked to the see the email.

26.   The Sales employee was unable to produce it.

27.   Ms. Hall asked that he send it to her.

28.   She never received it.

3

29.     Ms. Hall then addressed this directly with the International Logistics Manager. He, too, identified that he had not received the full set of usual shipping documents from the Sales Department.

30.     This action of changing the end-user on an export shipment of controlled weapons directly violated federal law including, but not limited to, the export license authorization, applicable ATF regulations, State Department statutes and regulations, Commerce Department statutes and regulations, US Customs and Border Protection statutes and regulations, and, upon information and belief, the Foreign Corrupt Practices Act (FCPA).

### Direct Report to Mr. Shawver

31.     On or about June 1, 2017, Ms. Hall reported what she learned directly to her supervisor Mr. Shawver.

32.     Specifically, she reported that she learned of SIG employees who appeared to have intentionally violated federal export laws regarding the shipment of controlled weapons to a foreign country.

33.     Mr. Shawver responded, "it is exporting 101 that you do not change the end-user on a shipment."

34.     This was a reference to requirements within federal statutes and regulations requiring that exports be shipped to the end-user identified on the export license.

35.     He asked Ms. Hall about the status of the shipment.

36.     She advised that part of it was still in the country and the rest was already in the air. She advised that she was working with the freight forwarder to correct the filing in the ACE system so that end-user to receive the shipment was the actual one listed on the export license authorization and *not* the one identified on the manually created invoice.

4

37. The conversation with Mr. Shawver ended with his comment "it sounds like we need to have an investigation here."

### Follow-up With Freight Forwarder on June 5, 2017

38. Mr. Shawver was out of the office the next few days on vacation.

39. On Monday June 5, 2017 Ms. Hall emailed the freight forwarder for further information regarding this shipment. She requested Proof of Delivery reflecting that the shipment was sent to the correct end-user – the one identified on the export license authorization – and *not* the one on the manual invoice.

40. She spoke directly with the freight forwarder advising that she would require this information as there was going to be an investigation regarding the shipment.

41. The representative advised that providing such a proof of delivery would "take some time."

### No Mention During Morning Communication - June 6, 2017

42. Mr. Shawver was scheduled to return to work on Tuesday, June 6, 2017.

43. That morning, he called Ms. Hall to advise that he had a late-night flight the night before and would be in the office later in the morning or early afternoon.

44. Mr. Shawver asked Ms. Hall questions about a Chinese toolmaker and its involvement with one of SIG's Israeli suppliers.

45. Ms. Hall notified Mr. Shawver that a meeting was scheduled for that Thursday to address issues surrounding this supplier and the export violation of technical data to China and a violation of the manufacturing licensing agreement issued by DDTC.

### FMLA Leave Reminder

46. Ms. Hall reminded Mr. Shawver during this early morning June 6th

communication that she would be out of the office that afternoon to attend her mother's oncology appointment.

47.     Ms. Shawver and others at SIG were well aware of her mother's serious health problems *and* Ms. Hall's need to assist in caring for her. Previously, Ms. Hall had taken leave using her accrued vacation and personal time to care for her mother and as recently as April 2017 had notified SIG that she would require FMLA leave throughout 2017 to care for her mother especially following her anticipated third surgery in May.

### *Sudden Notice of Termination*

48.     While working in the office that morning Ms. Hall did not see Mr. Shawver.

49.     Shortly before she was scheduled to leave for her mother's doctor appointment, Ms. Hall received a call from Human Resources ("HR") asking that she attend a meeting.

50.     She went to HR where she observed Mr. Shawver, who appeared to have just arrived at work, standing next to the HR representative's desk.

51.     Mr. Shawver then advised Ms. Hall that there had been a "reorganization", that Ms. Hall's position had become "redundant", and that SIG was "letting her go."

52.     One of the security managers then escorted me from the building.

### LEGAL CLAIMS

### COUNT I
### Whistleblower Claim RSA 275-E

53.     Ms. Hall restates and incorporates by reference all allegations within this Complaint

54.     Ms. Hall engaged in activity protected by the Whistleblower Statute when she made numerous good faith reports that she had reasonable cause to believe were a violation of United States law. These instances included, but were not limited to, reporting numerous

instances of direct and apparently intentional violations of federal law including, but not limited to, the export license authorization, applicable ATF regulations, State Department statutes and regulations, Commerce Department statutes and regulations, US Customs and Border Protection statutes and regulations, and, upon information and belief, the Foreign Corrupt Practices Act (FCPA).

55.     Thereafter, Ms. Hall was subjected to action that would dissuade a reasonable worker from reporting the legal violations when SIG terminated her employment.

56.     There was a causal connection between Ms. Hall's protected activity and the adverse employment action.

57.     As a direct and proximate result of the foregoing, Ms. Hall suffered damages and injury.

58.     Ms. Hall demands judgment against defendant for all available damages by statute and common law including, but not limited to, pain and suffering, compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT II
### (Wrongful Termination)

59.     Ms. Hall incorporates by reference all allegations within this Complaint.

60.     At all times during her employment with defendant, Ms. Hall performed her duties with diligence and competence.

61.     Ms. Hall engaged in protected activity under RSA 275-E by notifying her employer of numerous violations of federal export laws, violation of company policies, her investigation regarding these violations, the responses that employees provided, the names of

the individuals involved in the activity, and her belief that the actions may and were likely to result in harm to the SIG SAUER. Ms. Hall also engaged in protected activity by availing herself of FMLA leave rights and benefits.

62.    Defendant terminated Ms. Hall's employment because she engaged in protected activity under RSA 275-E and/or the FMLA.

63.    Defendant's decision was motivated by bad faith, malice, or retaliation.

64.    As a direct and proximate result of the foregoing, Ms. Hall suffered damages.

65.    Ms. Hall demands judgment against defendant, including, but not limited to compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

### COUNT III
### (FMLA Retaliation)

66.    The plaintiff incorporates by reference all allegations within this Complaint.

67.    Ms. Hall engaged in statutorily protected conduct by requesting FMLA leave.

68.    Defendant terminated Ms. Hall's employment because of Ms. Hall's exercise of her protected rights.

69.    Defendant's termination of Ms. Hall's employment, therefore, was causally related to her engaging in protected activity.

70.    Ms. Hall demands judgment against defendant including, but not limited to, backpay, frontpay, compensatory damages, enhanced compensatory damages, and attorneys fees, together with interest and costs and such other and further relief as this Court deems proper.

8

**JURY DEMAND**

71.     Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted,

PATRICIA HALL-CLOUTIER

By her attorneys,

SHERMAN LAW, PLLC

Dated: _8/10/2017_

John P. Sherman, Bar No. 12536
Sherman Law, PLLC
155 Fleet Street
Portsmouth, NH  03801
(603) 570-4837

9

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name:  Rockingham Superior Court

Case Name:  Patricia Hall-Cloutier v. SIG SAUER, Inc.

Case Number:
(if known)

## APPEARANCE/WITHDRAWAL

**APPEARANCE**
Type of appearance (Select One)
☑ Appearance          ☐ Limited Appearance *(Civil cases only)*
If limited appearance, scope of representation:

_____

Select One:
☑ As Counsel for:
Patricia Hall                    231 Long Hill Road, Dover, NH 03820

| (Name) | (Address) | (Telephone Number) |
|--------|-----------|--------------------|
| (Name) | (Address) | (Telephone Number) |
| (Name) | (Address) | (Telephone Number) |

☐ I will represent myself (*self-represented*)

**WITHDRAWAL**
As Counsel for _____  _____  _____

Type of Representation: (Select one)
☐ Appearance:
   ☐ Notice of withdrawal was sent to my client(s) on: _____ at the following address:

_____

   ☐ A motion to withdraw is being filed.

☐ Limited Appearance: (Select one)
   ☐ I am withdrawing my limited appearance as I have completed the terms of the limited representation.

   ☐ The terms of limited representation have not been completed. A motion to withdraw is being filed.

I certify that on this date I provided a copy of this document to the parties who have filed an appearance for this case by: ☐ Hand-delivery OR ☐ US Mail OR ☐ Email (only when there is prior agreement of the parties to use this method of service).

8/10/2017
Date
Sherman Law, PLLC

Signature
John P. Sherman

Mailing Address
155 Fleet Street, Portsmouth, NH 03801

Printed Name
jsherman@johnshermanlaw.com

603-570-4837

Email Address
12536

Telephone

NH Bar ID # if attorney

NHJB-2318-S (03/24/2014)

STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY                                           SUPERIOR COURT

218-2017-CV-01036

Patricia Hall-Cloutier

v.

SIG SAUER, Inc.

## NOTICE OF FILING OF NOTICE OF REMOVAL

To:    Maureen F. O'Neil, Clerk
       Rockingham County Superior Court
       P.O. Box 1258
       Kingston, NH 03848-1258

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§1441 and 1446, Defendant

SIG SAUER, INC., by and through its attorneys, JACKSON LEWIS P.C., has this day filed in

the Clerk's Office of the United States District Court for the District of New Hampshire,

Concord, New Hampshire, a Notice of Removal of this case, as shown by copy attached, and in

accordance with the above statute, the State Court proceedings should proceed no further herein,

unless and until the case is remanded.

<div style="margin-left:40%">

Respectfully Submitted,
SIG SAUER, INC.,
By its attorneys,
JACKSON LEWIS P.C.,

By:    _Martha Van Oot_
       Martha Van Oot, NHBA #963
       100 International Drive, Suite 363
       Portsmouth, NH 03801
       603.559.2700
       martha.vanoot@jacksonlewis.com

</div>

Date:   October 16, 2017

## Certificate of Service

I hereby certify that the foregoing was this day served via Conventional Filing counsel for Plaintiff: John P. Sherman, Esq., Sherman Law, PLLC, 155 Fleet Street, Portsmouth, NH, 03801.

Date:    October 16, 2017

_Martha Van Oot_
Martha Van Oot

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name: **Rockingham Superior Court**

Case Name: **Patricia Hall-Cloutier v SIG SAUER, Inc.**

Case Number: **218-2017-CV-01036**
(if known)

## APPEARANCE/WITHDRAWAL

*[stamp: FILED ROCKINGHAM SUPERIOR COURT 2017 OCT 18 A 10: 05]*

## APPEARANCE

Type of appearance (Select One)

[✔] Appearance          [ ] Limited Appearance *(Civil cases only)*

If limited appearance, scope of representation:

_____

Select One:

[✔] As Counsel for:

SIG SAUER, Inc.     72 Pease Boulevard, Newington, NH 03801     (603) 610-3000
(Name)              (Address)                           (Telephone Number)

(Name)              (Address)                           (Telephone Number)

(Name)              (Address)                           (Telephone Number)

[ ] I will represent myself *(self-represented)*

## WITHDRAWAL

As Counsel for _____ _____ _____

Type of Representation: (Select one)

[ ] Appearance:

    [ ] Notice of withdrawal was sent to my client(s) on: _____ at the following address:

    _____

    [ ] A motion to withdraw is being filed.

[ ] Limited Appearance: (Select one)

    [ ] I am withdrawing my limited appearance as I have completed the terms of the limited representation.

    [ ] The terms of limited representation have not been completed. A motion to withdraw is being filed.

I certify that on this date I provided a copy of this document to the parties who have filed an appearance for this case by: [ ] Hand-delivery OR [✔] US Mail OR [ ] Email (only when there is prior agreement of the parties to use this method of service).

| | |
|---|---|
| October 16, 2017 | JACKSON LEWIS P.C. |
| Date | By: *Martha Van Oot* (signature) |
| 100 International Drive, Suite 363 | Signature |
| Mailing Address | Martha Van Oot |
| Portsmouth, NH 03801 | Printed Name |
| | martha.vanoot@jacksonlewis.com |
| | Email Address |
| (603) 559-2700 | 963 |
| Telephone | NH Bar ID # if attorney |

5

STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY
SUPERIOR COURT

Patricia Hall-Cloutier

v.

SIG SAUER, Inc.

Case No. 218-2017-CV-01036

## ACCEPTANCE AND WAIVER OF SERVICE

The undersigned, as counsel for and on behalf of Defendant SIG SAUER, INC., hereby accepts service of the Summons and Complaint filed September 11, 2017 in the above-entitled matter, and waives any and all formalities and defenses in connection with service of notice and process.

Defendant does not waive other defenses to which it may be entitled.

JACKSON LEWIS P.C.,

Date: September 20, 2017
By: _____ (EF)
Debra Weiss Ford, NH Bar # 2687
100 International Drive, Suite 363
Portsmouth, NH 03801
603.559.2727
debra.ford@jacksonlewis.com

STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY

RECEIVED
ROCKINGHAM
SUPERIOR COURT

2017 SEP 25  A 9 21

SUPERIOR COURT

Patricia Hall-Cloutier

v.

SIG SAUER, Inc.

Case No. 218-2017-CV-01036

## ACCEPTANCE AND WAIVER OF SERVICE

The undersigned, as counsel for and on behalf of Defendant SIG SAUER, INC., hereby accepts service of the Summons and Complaint filed September 11, 2017 in the above-entitled matter, and waives any and all formalities and defenses in connection with service of notice and process.

Defendant does not waive other defenses to which it may be entitled.

JACKSON LEWIS P.C.,

Date:  September 20, 2017          By:

Debra Weiss Ford, NH Bar # 2687
100 International Drive, Suite 363
Portsmouth, NH 03801
603.559.2727
debra.ford@jacksonlewis.com

4

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH 03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

FOR RETURN

## SUMMONS IN A CIVIL ACTION

Case Name:    **Patricia Hall-Cloutier v SIG SAUER, Inc.**
Case Number:  **218-2017-CV-01036**

Date Complaint Filed: September 11, 2017
A Complaint has been filed against SIG SAUER, Inc. in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| October 28, 2017 | Patricia Hall-Cloutier shall have this Summons and the attached Complaint served upon SIG SAUER, Inc. by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| November 18, 2017 | Patricia Hall-Cloutier shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | SIG SAUER, Inc. must file an Appearance and Answer or other responsive pleading form with this Court.   A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to SIG SAUER, Inc.:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
   John P. Sherman, ESQ

Sherman Law PLLC
155 Fleet Street
Portsmouth NH 03801

BY ORDER OF THE COURT

September 13, 2017

Maureen F. O'Neil
Clerk of Court

(504)

ROCKINGHAM COUNTY                                    SUPERIOR COURT

Patricia Hall-Cloutier
231 Long Hill Road
Dover, NH 03820

v.

SIG SAUER Inc.
72 Pease Boulevard
Newington, NH 03801

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      Patricia Hall-Cloutier ("Ms. Hall") is an individual residing at 231 Long Hill
Road, Dover, New Hampshire.

2.      Defendant SIG SAUER Inc. ("SIG") is a Delaware corporation registered to do
business in New Hampshire with a principal address at 72 Pease Boulevard, Newington, New
Hampshire.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to RSA 491:7.

4.      Venue is proper pursuant to RSA 507:9.

### FACTS RELEVANT TO ALL COUNTS

5.      Ms. Hall has extensive experience with the laws and procedures relating to the
import/export of controlled firearms.

6.      On or about September 15, 2015, SIG hired Ms. Hall as the Director of
Import/Export Compliance.

*No Discipline*

1

7.    Ms. Hall performed her job duties satisfactorily.

8.    She was not the subject of any discipline pursuant to SIG's disciplinary policies.

### *Recent Raise and Bonus*

9.    In February 2017 Ms. Hall received a performance-based raise.

10.    On May 11, 2017 Ms. Hall received a raise.

### *Intentional Violation of Federal*
### *Controlled Weapons Export Laws*

11.    Throughout the course of her employment, Ms. Hall identified and reported instances in which documentation regarding the export of SIG weapons violated applicable United States laws regarding export license applications, agreements, and regulations.

12.    One particularly noteworthy instance of such a violation happened on or about June 1, 2017.

13.    Ms. Hall discovered that someone within SIG's Sales Department changed the identified recipient of a shipment of controlled weapons, as identified by the National Firearms Act.

14.    Ms. Hall was able to confirm that someone at SIG removed the automatically generated Oracle invoice from the documents package and substituted a manually created invoice that identified a different end-user than the end-user identified on the export license that Congress, the State Department (DOS-DDTC), and the ATF approved.

15.    Ms. Hall confirmed that this happened by comparing available documentation regarding the shipment – including a comparison of the approved export license authorization with the documents sent to the freight forwarder.

16.    Upon discovering the end-user change, she also communicated directly with the freight forwarder which advised that the end-user the Sales Department had identified was the

2

end-user on the documents they received.

*Sales Department Admitted Changing End-User*

17. Ms. Hall then discovered that the Sales Department did *not* send the freight forwarder all of the usual required documents.

18. Instead, it omitted several of the required ones that would have had the correct end-user *and* substituted the manually created invoice identifying the new end-user.

19. Upon information and belief, the Sales Department communicated with the freight forwarder in this way to conceal that it changed the end-user.

20. When asked how it happened that he did not send the freight forwarder all of the usually required and forwarded documents, the Sales Department representative advised that he had "forgotten to send all of them."

21. This was an intentional misrepresentation.

22. When asked why the end-user was changed, the Sales person advised that the new name of the end-user was the "Indonesian way of spelling Ministry of Defense."

23. When asked why the address for the end-user—in addition to the spelling of the name—also was changed, the Sales person initially had no response. Another individual present then claimed, however, that he received "an email from the agent for the customer who directed that the shipment needed to go to the new address."

24. This was an intentional misrepresentation.

25. Ms. Hall asked to the see the email.

26. The Sales employee was unable to produce it.

27. Ms. Hall asked that he send it to her.

28. She never received it.

29.    Ms. Hall then addressed this directly with the International Logistics Manager.
He, too, identified that he had not received the full set of usual shipping documents from the
Sales Department.

30.    This action of changing the end-user on an export shipment of controlled
weapons directly violated federal law including, but not limited to, the export license
authorization, applicable ATF regulations, State Department statutes and regulations,
Commerce Department statutes and regulations, US Customs and Border Protection statutes
and regulations, and, upon information and belief, the Foreign Corrupt Practices Act (FCPA).

### Direct Report to Mr. Shawver

31.    On or about June 1, 2017, Ms. Hall reported what she learned directly to her
supervisor Mr. Shawver.

32.    Specifically, she reported that she learned of SIG employees who appeared to
have intentionally violated federal export laws regarding the shipment of controlled weapons to
a foreign country.

33.    Mr. Shawver responded, "it is exporting 101 that you do not change the end-
user on a shipment."

34.    This was a reference to requirements within federal statutes and regulations
requiring that exports be shipped to the end-user identified on the export license.

35.    He asked Ms. Hall about the status of the shipment.

36.    She advised that part of it was still in the country and the rest was already in the
air. She advised that she was working with the freight forwarder to correct the filing in the
ACE system so that end-user to receive the shipment was the actual one listed on the export
license authorization and *not* the one identified on the manually created invoice.

37. The conversation with Mr. Shawver ended with his comment "it sounds like we need to have an investigation here."

*Follow-up With Freight Forwarder on June 5, 2017*

38. Mr. Shawver was out of the office the next few days on vacation.

39. On Monday June 5, 2017 Ms. Hall emailed the freight forwarder for further information regarding this shipment. She requested Proof of Delivery reflecting that the shipment was sent to the correct end-user – the one identified on the export license authorization – and *not* the one on the manual invoice.

40. She spoke directly with the freight forwarder advising that she would require this information as there was going to be an investigation regarding the shipment.

41. The representative advised that providing such a proof of delivery would "take some time."

*No Mention During Morning Communication - June 6, 2017*

42. Mr. Shawver was scheduled to return to work on Tuesday, June 6, 2017.

43. That morning, he called Ms. Hall to advise that he had a late-night flight the night before and would be in the office later in the morning or early afternoon.

44. Mr. Shawver asked Ms. Hall questions about a Chinese toolmaker and its involvement with one of SIG's Israeli suppliers.

45. Ms. Hall notified Mr. Shawver that a meeting was scheduled for that Thursday to address issues surrounding this supplier and the export violation of technical data to China and a violation of the manufacturing licensing agreement issued by DDTC.

*FMLA Leave Reminder*

46. Ms. Hall reminded Mr. Shawver during this early morning June 6th

5

communication that she would be out of the office that afternoon to attend her mother's oncology appointment.

47.     Ms. Shawver and others at SIG were well aware of her mother's serious health problems *and* Ms. Hall's need to assist in caring for her.  Previously, Ms. Hall had taken leave using her accrued vacation and personal time to care for her mother and as recently as April 2017 had notified SIG that she would require FMLA leave throughout 2017 to care for her mother especially following her anticipated third surgery in May.

### Sudden Notice of Termination

48.     While working in the office that morning Ms. Hall did not see Mr. Shawver.

49.     Shortly before she was scheduled to leave for her mother's doctor appointment, Ms. Hall received a call from Human Resources ("HR") asking that she attend a meeting.

50.     She went to HR where she observed Mr. Shawver, who appeared to have just arrived at work, standing next to the HR representative's desk.

51.     Mr. Shawver then advised Ms. Hall that there had been a "reorganization", that Ms. Hall's position had become "redundant", and that SIG was "letting her go."

52.     One of the security managers then escorted me from the building.

## LEGAL CLAIMS

### COUNT I
### Whistleblower Claim RSA 275-E

53.     Ms. Hall restates and incorporates by reference all allegations within this Complaint

54.     Ms. Hall engaged in activity protected by the Whistleblower Statute when she made numerous good faith reports that she had reasonable cause to believe were a violation of United States law.  These instances included, but were not limited to, reporting numerous

instances of direct and apparently intentional violations of federal law including, but not limited to, the export license authorization, applicable ATF regulations, State Department statutes and regulations, Commerce Department statutes and regulations, US Customs and Border Protection statutes and regulations, and, upon information and belief, the Foreign Corrupt Practices Act (FCPA).

55.    Thereafter, Ms. Hall was subjected to action that would dissuade a reasonable worker from reporting the legal violations when SIG terminated her employment.

56.    There was a causal connection between Ms. Hall's protected activity and the adverse employment action.

57.    As a direct and proximate result of the foregoing, Ms. Hall suffered damages and injury.

58.    Ms. Hall demands judgment against defendant for all available damages by statute and common law including, but not limited to, pain and suffering, compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT II
### (Wrongful Termination)

59.    Ms. Hall incorporates by reference all allegations within this Complaint.

60.    At all times during her employment with defendant, Ms. Hall performed her duties with diligence and competence.

61.    Ms. Hall engaged in protected activity under RSA 275-E by notifying her employer of numerous violations of federal export laws, violation of company policies, her investigation regarding these violations, the responses that employees provided, the names of

the individuals involved in the activity, and her belief that the actions may and were likely to result in harm to the SIG SAUER. Ms. Hall also engaged in protected activity by availing herself of FMLA leave rights and benefits.

62.     Defendant terminated Ms. Hall's employment because she engaged in protected activity under RSA 275-E and/or the FMLA.

63.     Defendant's decision was motivated by bad faith, malice, or retaliation.

64.     As a direct and proximate result of the foregoing, Ms. Hall suffered damages.

65.     Ms. Hall demands judgment against defendant, including, but not limited to compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT III
### (FMLA Retaliation)

66.     The plaintiff incorporates by reference all allegations within this Complaint.

67.     Ms. Hall engaged in statutorily protected conduct by requesting FMLA leave.

68.     Defendant terminated Ms. Hall's employment because of Ms. Hall's exercise of her protected rights.

69.     Defendant's termination of Ms. Hall's employment, therefore, was causally related to her engaging in protected activity.

70.     Ms. Hall demands judgment against defendant including, but not limited, backpay, frontpay, compensatory damages, enhanced compensatory damages, and attorneys fees, together with interest and costs and such other and further relief as this Court deems proper.

## JURY DEMAND

71.     Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted,

PATRICIA HALL-CLOUTIER

By her attorneys,

SHERMAN LAW, PLLC

Dated: 8/10/2017

John P. Sherman, Bar No. 12536
Sherman Law, PLLC
155 Fleet Street
Portsmouth, NH 03801
(603) 570-4837

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name: Rockingham Superior Court

Case Name: Patricia Hall-Cloutier v. SIG SAUER, Inc.

Case Number:
(if known)

## APPEARANCE/WITHDRAWAL

**APPEARANCE**

Type of appearance (Select One)

☑ Appearance          ☐ Limited Appearance *(Civil cases only)*

If limited appearance, scope of representation:

_____

_____

Select One:

☑ As Counsel for:

| Patricia Hall | 231 Long Hill Road, Dover, NH 03820 | |
|---|---|---|
| (Name) | (Address) | (Telephone Number) |
| (Name) | (Address) | (Telephone Number) |
| (Name) | (Address) | (Telephone Number) |

☐ I will represent myself (*self-represented*)

**WITHDRAWAL**

As Counsel for _____  _____  _____

Type of Representation: (Select one)

☐ Appearance:
　　☐ Notice of withdrawal was sent to my client(s) on: _____ at the following address:

　　_____

　　☐ A motion to withdraw is being filed.

☐ Limited Appearance: (Select one)
　　☐ I am withdrawing my limited appearance as I have completed the terms of the limited representation.

　　☐ The terms of limited representation have not been completed. A motion to withdraw is being filed.

I certify that on this date I provided a copy of this document to the parties who have filed an appearance for this case by: ☐ Hand-delivery OR ☐ US Mail OR ☐ Email (only when there is prior agreement of the parties to use this method of service).

8 / 10 / 2017

Date

Sherman Law, PLLC

Mailing Address
155 Fleet Street, Portsmouth, NH 03801

603-570-4837

Telephone

Signature
John P. Sherman

Printed Name
jsherman@johnshermanlaw.com

Email Address
12536

NH Bar ID # if attorney

## THE STATE OF NEW HAMPSHIRE
### JUDICIAL BRANCH
#### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH 03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:     **Patricia Hall-Cloutier v SIG SAUER, Inc.**
Case Number:   **218-2017-CV-01036**

Date Complaint Filed: September 11, 2017
A Complaint has been filed against SIG SAUER, Inc. in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| October 28, 2017 | Patricia Hall-Cloutier shall have this Summons and the attached Complaint served upon SIG SAUER, Inc. by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| November 18, 2017 | Patricia Hall-Cloutier shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | SIG SAUER, Inc. must file an Appearance and Answer or other responsive pleading form with this Court.   A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to SIG SAUER, Inc.:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  John P. Sherman, ESQ

Sherman Law PLLC
155 Fleet Street
Portsmouth NH 03801

  BY ORDER OF THE COURT

September 13, 2017

  Maureen F. O'Neil
  Clerk of Court

(504)

3

STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY                                    SUPERIOR COURT

Patricia Hall-Cloutier
231 Long Hill Road
Dover, NH 03820

v.

SIG SAUER Inc.
72 Pease Boulevard
Newington, NH 03801

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      Patricia Hall-Cloutier ("Ms. Hall") is an individual residing at 231 Long Hill
Road, Dover, New Hampshire.

2.      Defendant SIG SAUER Inc. ("SIG") is a Delaware corporation registered to do
business in New Hampshire with a principal address at 72 Pease Boulevard, Newington, New
Hampshire.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to RSA 491:7.

4.      Venue is proper pursuant to RSA 507:9.

### FACTS RELEVANT TO ALL COUNTS

5.      Ms. Hall has extensive experience with the laws and procedures relating to the
import/export of controlled firearms.

6.      On or about September 15, 2015, SIG hired Ms. Hall as the Director of
Import/Export Compliance.

*No Discipline*

2

7. Ms. Hall performed her job duties satisfactorily.

8. She was not the subject of any discipline pursuant to SIG's disciplinary policies.

### Recent Raise and Bonus

9. In February 2017 Ms. Hall received a performance-based raise.

10. On May 11, 2017 Ms. Hall received a raise.

### Intentional Violation of Federal Controlled Weapons Export Laws

11. Throughout the course of her employment, Ms. Hall identified and reported instances in which documentation regarding the export of SIG weapons violated applicable United States laws regarding export license applications, agreements, and regulations.

12. One particularly noteworthy instance of such a violation happened on or about June 1, 2017.

13. Ms. Hall discovered that someone within SIG's Sales Department changed the identified recipient of a shipment of controlled weapons, as identified by the National Firearms Act.

14. Ms. Hall was able to confirm that someone at SIG removed the automatically generated Oracle invoice from the documents package and substituted a manually created invoice that identified a different end-user than the end-user identified on the export license that Congress, the State Department (DOS-DDTC), and the ATF approved.

15. Ms. Hall confirmed that this happened by comparing available documentation regarding the shipment – including a comparison of the approved export license authorization with the documents sent to the freight forwarder.

16. Upon discovering the end-user change, she also communicated directly with the freight forwarder which advised that the end-user the Sales Department had identified was the

end-user on the documents they received.

### *Sales Department Admitted Changing End-User*

17.    Ms. Hall then discovered that the Sales Department did *not* send the freight forwarder all of the usual required documents.

18.    Instead, it omitted several of the required ones that would have had the correct end-user *and* substituted the manually created invoice identifying the new end-user.

19.    Upon information and belief, the Sales Department communicated with the freight forwarder in this way to conceal that it changed the end-user.

20.    When asked how it happened that he did not send the freight forwarder all of the usually required and forwarded documents, the Sales Department representative advised that he had "forgotten to send all of them."

21.    This was an intentional misrepresentation.

22.    When asked why the end-user was changed, the Sales person advised that the new name of the end-user was the "Indonesian way of spelling Ministry of Defense."

23.    When asked why the address for the end-user—in addition to the spelling of the name—also was changed, the Sales person initially had no response.  Another individual present then claimed, however, that he received "an email from the agent for the customer who directed that the shipment needed to go to the new address."

24.    This was an intentional misrepresentation.

25.    Ms. Hall asked to the see the email.

26.    The Sales employee was unable to produce it.

27.    Ms. Hall asked that he send it to her.

28.    She never received it.

29.     Ms. Hall then addressed this directly with the International Logistics Manager. He, too, identified that he had not received the full set of usual shipping documents from the Sales Department.

30.     This action of changing the end-user on an export shipment of controlled weapons directly violated federal law including, but not limited to, the export license authorization, applicable ATF regulations, State Department statutes and regulations, Commerce Department statutes and regulations, US Customs and Border Protection statutes and regulations, and, upon information and belief, the Foreign Corrupt Practices Act (FCPA).

### *Direct Report to Mr. Shawver*

31.     On or about June 1, 2017, Ms. Hall reported what she learned directly to her supervisor Mr. Shawver.

32.     Specifically, she reported that she learned of SIG employees who appeared to have intentionally violated federal export laws regarding the shipment of controlled weapons to a foreign country.

33.     Mr. Shawver responded, "it is exporting 101 that you do not change the end-user on a shipment."

34.     This was a reference to requirements within federal statutes and regulations requiring that exports be shipped to the end-user identified on the export license.

35.     He asked Ms. Hall about the status of the shipment.

36.     She advised that part of it was still in the country and the rest was already in the air. She advised that she was working with the freight forwarder to correct the filing in the ACE system so that end-user to receive the shipment was the actual one listed on the export license authorization and *not* the one identified on the manually created invoice.

37.    The conversation with Mr. Shawver ended with his comment "it sounds like we need to have an investigation here."

### Follow-up With Freight Forwarder on June 5, 2017

38.    Mr. Shawver was out of the office the next few days on vacation.

39.    On Monday June 5, 2017 Ms. Hall emailed the freight forwarder for further information regarding this shipment. She requested Proof of Delivery reflecting that the shipment was sent to the correct end-user – the one identified on the export license authorization – and *not* the one on the manual invoice.

40.    She spoke directly with the freight forwarder advising that she would require this information as there was going to be an investigation regarding the shipment.

41.    The representative advised that providing such a proof of delivery would "take some time."

### No Mention During Morning Communication - June 6, 2017

42.    Mr. Shawver was scheduled to return to work on Tuesday, June 6, 2017.

43.    That morning, he called Ms. Hall to advise that he had a late-night flight the night before and would be in the office later in the morning or early afternoon.

44.    Mr. Shawver asked Ms. Hall questions about a Chinese toolmaker and its involvement with one of SIG's Israeli suppliers.

45.    Ms. Hall notified Mr. Shawver that a meeting was scheduled for that Thursday to address issues surrounding this supplier and the export violation of technical data to China and a violation of the manufacturing licensing agreement issued by DDTC.

### FMLA Leave Reminder

46.    Ms. Hall reminded Mr. Shawver during this early morning June 6th

communication that she would be out of the office that afternoon to attend her mother's oncology appointment.

47.     Ms. Shawver and others at SIG were well aware of her mother's serious health problems *and* Ms. Hall's need to assist in caring for her.  Previously, Ms. Hall had taken leave using her accrued vacation and personal time to care for her mother and as recently as April 2017 had notified SIG that she would require FMLA leave throughout 2017 to care for her mother especially following her anticipated third surgery in May.

### Sudden Notice of Termination

48.     While working in the office that morning Ms. Hall did not see Mr. Shawver.

49.     Shortly before she was scheduled to leave for her mother's doctor appointment, Ms. Hall received a call from Human Resources ("HR") asking that she attend a meeting.

50.     She went to HR where she observed Mr. Shawver, who appeared to have just arrived at work, standing next to the HR representative's desk.

51.     Mr. Shawver then advised Ms. Hall that there had been a "reorganization", that Ms. Hall's position had become "redundant", and that SIG was "letting her go."

52.     One of the security managers then escorted me from the building.

## LEGAL CLAIMS

### COUNT I
### Whistleblower Claim RSA 275-E

53.     Ms. Hall restates and incorporates by reference all allegations within this Complaint

54.     Ms. Hall engaged in activity protected by the Whistleblower Statute when she made numerous good faith reports that she had reasonable cause to believe were a violation of United States law.  These instances included, but were not limited to, reporting numerous

6

instances of direct and apparently intentional violations of federal law including, but not

limited to, the export license authorization, applicable ATF regulations, State Department

statutes and regulations, Commerce Department statutes and regulations, US Customs and

Border Protection statutes and regulations, and, upon information and belief, the Foreign

Corrupt Practices Act (FCPA).

55.     Thereafter, Ms. Hall was subjected to action that would dissuade a reasonable

worker from reporting the legal violations when SIG terminated her employment.

56.     There was a causal connection between Ms. Hall's protected activity and the

adverse employment action.

57.     As a direct and proximate result of the foregoing, Ms. Hall suffered damages

and injury.

58.     Ms. Hall demands judgment against defendant for all available damages by

statute and common law including, but not limited to, pain and suffering, compensatory and

enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any

and all other damages to which he is entitled including all interest all of which is within the

jurisdictional limit of this Court.

<div align="center">

**COUNT II**
**(Wrongful Termination)**

</div>

59.     Ms. Hall incorporates by reference all allegations within this Complaint.

60.     At all times during her employment with defendant, Ms. Hall performed her

duties with diligence and competence.

61.     Ms. Hall engaged in protected activity under RSA 275-E by notifying her

employer of numerous violations of federal export laws, violation of company policies, her

investigation regarding these violations, the responses that employees provided, the names of

the individuals involved in the activity, and her belief that the actions may and were likely to result in harm to the SIG SAUER. Ms. Hall also engaged in protected activity by availing herself of FMLA leave rights and benefits.

62.     Defendant terminated Ms. Hall's employment because she engaged in protected activity under RSA 275-E and/or the FMLA.

63.     Defendant's decision was motivated by bad faith, malice, or retaliation.

64.     As a direct and proximate result of the foregoing, Ms. Hall suffered damages.

65.     Ms. Hall demands judgment against defendant, including, but not limited to compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT III
### (FMLA Retaliation)

66.     The plaintiff incorporates by reference all allegations within this Complaint.

67.     Ms. Hall engaged in statutorily protected conduct by requesting FMLA leave.

68.     Defendant terminated Ms. Hall's employment because of Ms. Hall's exercise of her protected rights.

69.     Defendant's termination of Ms. Hall's employment, therefore, was causally related to her engaging in protected activity.

70.     Ms. Hall demands judgment against defendant including, but not limited, backpay, frontpay, compensatory damages, enhanced compensatory damages, and attorneys fees, together with interest and costs and such other and further relief as this Court deems proper.

## **JURY DEMAND**

71.  Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted,

PATRICIA HALL-CLOUTIER

By her attorneys,

SHERMAN LAW, PLLC

Dated: 8/10/2017

John P. Sherman, Bar No. 12536
Sherman Law, PLLC
155 Fleet Street
Portsmouth, NH  03801
(603) 570-4837

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

Court Name: Rockingham Superior Court

Case Name: **Patricia Hall-Cloutier v. SIG SAUER, Inc.**

Case Number: _____
(if known)

## APPEARANCE/WITHDRAWAL

### APPEARANCE
Type of appearance (Select One)

[✔] Appearance          [ ] Limited Appearance *(Civil cases only)*

If limited appearance, scope of representation:

_____

_____

Select One:

[✔] As Counsel for:
**Patricia Hall**          **231 Long Hill Road, Dover, NH 03820**

| (Name) | (Address) | (Telephone Number) |
|---|---|---|

| (Name) | (Address) | (Telephone Number) |
|---|---|---|

| (Name) | (Address) | (Telephone Number) |
|---|---|---|

[ ] I will represent myself (*self-represented*)

### WITHDRAWAL
As Counsel for _____ _____ _____

Type of Representation: (Select one)

[ ] Appearance:

    [ ] Notice of withdrawal was sent to my client(s) on: _____ at the following address:

_____

    [ ] A motion to withdraw is being filed.

[ ] Limited Appearance: (Select one)

    [ ] I am withdrawing my limited appearance as I have completed the terms of the limited representation.

    [ ] The terms of limited representation have not been completed. A motion to withdraw is being filed.

I certify that on this date I provided a copy of this document to the parties who have filed an appearance for this case by: [ ] Hand-delivery OR [ ] US Mail OR [ ] Email (only when there is prior agreement of the parties to use this method of service).

8/10/2017
_____
Date

**Sherman Law, PLLC**
_____
Mailing Address

**155 Fleet Street, Portsmouth, NH 03801**
_____

**603-570-4837**
_____
Telephone

Signature

**John P. Sherman**
_____
Printed Name

**jsherman@johnshermanlaw.com**
_____
Email Address

**12536**
_____
NH Bar ID # if attorney

NHJB-2318-S (03/24/2014)

/