UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Patricia Hall-Cloutier

    v.                                     Civil No. 17-cv-491-LM
                                             Opinion No. 2018 DNH 010

Sig Sauer, Inc.

**O R D E R**

Plaintiff Patricia Hall-Cloutier ("Hall") brings suit against her former employer, Sig Sauer, Inc. ("Sig Sauer"), alleging that Sig Sauer wrongfully terminated her for requesting leave under the Family Medical Leave Act ("FMLA") and in response to her reporting violations of federal law by other Sig Sauer employees. Sig Sauer moves to compel Hall to arbitrate the claims she has asserted in this action and requests that the court stay the case pending arbitration. Hall objects.

**STANDARD OF REVIEW**

Both Hall and Sig Sauer rely on materials beyond those attached to or referenced in Hall's complaint. In those circumstances, courts in the First Circuit employ the summary judgment standard in resolving a motion to compel arbitration. See, e.g., Landry v. Time Warner Cable, Inc., No. 16-cv-507-SM, 2017 WL 3431959, at *1 (D.N.H. Aug. 9, 2017) (citing cases). Therefore, Sig Sauer must show "that there is no genuine dispute

as to any material fact and [that it] is entitled to" the relief it seeks. Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

**BACKGROUND**

On September 15, 2015, Sig Sauer hired Hall as its Director of Import/Export Compliance. Over the next year-and-a-half, Hall performed her job well, and received at least one performance-based raise.

During her employment, Hall identified and reported instances in which documentation regarding the export of Sig Sauer weapons violated applicable United States laws regarding export license applications, agreements, and regulations. The last one of these instances occurred in June 2017.

On June 1, 2017, Hall discovered that someone within Sig Sauer's Sales Department had changed the identified recipient of a shipment of controlled weapons, as identified by the National Firearms Act. After she investigated the matter, she learned that the Sales Department intentionally gave the freight forwarder incorrect paperwork to conceal the actual recipient in violation of state and federal law.

Shortly after discovering the Sales Department's conduct, Hall reported the violation to her supervisor, Mr. Shawver. Shawver asked Hall several questions about the violation and suggested that Sig Sauer would need to investigate the matter further.

Shawver was out of the office on vacation for the few days following his discussion with Hall. While Shawver was on vacation, Hall asked the freight forwarder for more information and stated that there would be an investigation regarding the shipment in question.

On the morning of June 6, 2017, Shawver called Hall and told her that he would be in the office later that afternoon. During that phone call, the two discussed various issues regarding Sig Sauer's business, but Shawver did not mention the recent violation Hall had reported. Hall also reminded Shawver that she would be out of the office that afternoon to attend her mother's oncology appointment. Hall, who had taken personal and vacation leave caring for her mother, had notified Sig Sauer in April 2017 that she would need to take FMLA leave throughout 2017 to care for her mother.

Later on June 6, Hall received a call from a representative in the Human Resources department asking her to come to the representative's office. When she arrived, she saw Shawver standing next to the representative's desk. Shawver informed

3

Hall that there had been a "reorganization," that her position had become "redundant," and that Sig Sauer was "letting her go." A security manager escorted Hall from the building shortly thereafter.

**DISCUSSION**

Following her termination, Hall brought this suit in New Hampshire Superior Court, Rockingham County, alleging a Whistleblower Claim under RSA 275-E, and claims for wrongful termination and FMLA retaliation. Sig Sauer removed the case to this court and now moves to compel Hall to arbitrate the claims she asserts in this action. Sig Sauer also requests that the court stay the matter pending arbitration.

In support, Sig Sauer asserts that before Hall's employment began, she signed a "Confidential Information, Non-Solicitation, Invention Assignment and Arbitration Agreement" (the "Agreement"). Sig Sauer notes that the Agreement contains a provision addressing Hall's employment with and termination from Sig Sauer and a provision that provides all disputes "arising out of, related to, or resulting from" the Agreement shall be subject to arbitration. Hall argues that her claims in this action are not subject to the arbitration clause in the Agreement.

4

When "construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)). Although there exists a federal policy favoring arbitration, that policy "does not totally displace ordinary rules of contract interpretation." Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 25 (1st Cir. 2000). Instead, "a court must ascertain whether: '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" Gove v. Career Sys. Dev. Corp., 689 F.3d 1, 4 (1st Cir. 2012) (quoting Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)).

The parties' dispute centers around whether Hall's claims alleged in her complaint fall within the scope of the Agreement. Sig Sauer argues that Hall's claims center around her termination, which is plainly addressed in the Agreement. Hall disagrees, contending that the claims she asserts in this action do not come with the arbitration clause's scope.

I.   Scope of the Arbitration Clause

In determining whether a party's claims fall within the scope of an arbitration clause, the court focuses on the factual allegations underlying the claims in the complaint. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 378 (1st Cir. 2011). "In carrying out this endeavor, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Id. at 376 (citing cases) (internal quotation marks omitted). Thus, in evaluating the scope of an arbitration clause, "arbitration will be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 450 (1st Cir. 2010) (internal quotation marks and citations omitted).

Section 11 of the Agreement, titled "Arbitration," provides in relevant part:

> In consideration of my employment with the Company and my receipt of compensation, pay raises and other benefits paid to me by the Company, at present and in the future, I agree that any and all controversies, claims or disputes with the Company arising out of, relating to, or resulting from this Agreement shall be subject to binding arbitration under the arbitration rules set forth in the applicable state rules of civil procedure or statute.

Doc. no. 4-2 at 3.  Section 7 of the Agreement, titled "Effect of At-Will Employment," provides in relevant part:

> I understand and agree that I am not employed for any particular period of time.  As an employee at-will, I am free to terminate my employment, and the Company is free to terminate my employment at any time, with or without cause, for any lawful reason.  If I cease to be an employee of the Company for any reason, I will promptly return to the Company all originals and copies of any documents, software, equipment, or other property of any nature belonging to the Company or containing information about the Company or its products.

Id. at 2.

Section 7 of the Agreement addresses Hall's employment with Sig Sauer, including termination from the company.  As such, her claims in this action, which are based on the circumstances surrounding her termination, arise out of, relate to, or result from the Agreement, and appear to fall squarely within the scope of the arbitration clause.  See United States ex rel. Hagerty v. Cyberonics, Inc., 146 F. Supp. 3d 337, 348 (D. Mass. 2015) (holding that claims alleging retaliatory termination were within the scope of an agreement providing for arbitration of claims "arising out of or relating to" plaintiff's employment and termination); United States v. Consigli Const. Co., Inc., 873 F. Supp. 2d 409, 412 (D. Me. 2012) (noting the broad scope of an arbitration agreement that use the "arising out of, or relating to" language).

7

II. Other Documents Discussing Hall's Employment

Hall argues that the arbitration clause in the Agreement should be interpreted to apply to only specific conduct, including her use of confidential information (Section 3), intellectual property (Sections 4 and 5), use of company property (Section 6), solicitation of customers (Section 8), raiding employees (Section 9), and engaging in transactions for personal gain (Section 10). Hall also contends that the arbitration clause does not apply to sections dealing with the terms of her employment, which include Section 1 (Exclusive Services), Section 2 (Compensation and Benefits), the Section titled "Miscellaneous Provisions,"[1] and, relevant here, Section 7 ("Effect of At-Will Employment").

In support of her interpretation of the arbitration clause's limited applicability, Hall contends that her employment relationship with Sig Sauer is defined by other documents. These include her signed offer letter, see doc. no. 8-3, and her signed acknowledgement that she received and read Sig Sauer's employee handbook, see doc. no. 8-4, both of which she signed on the same day she signed the Agreement. She contends that because these documents define the scope and terms

---

[1] Both the "Miscellaneous Provisions" clause and the arbitration clause are numbered Section 11. This appears to be a typo.

of her employment relationship and because they do not incorporate or refer to the Agreement or its arbitration clause, the arbitration clause necessarily does not encompass her claims arising from her termination.

Hall analogizes the facts of this case to those in Zuber v. Vandalia Research, Inc., No. 3:12-0942, 2012 WL 4928360 (S.D. W. Va. Oct. 16, 2012). In Zuber, as in this case, the plaintiff brought claims against his former employer arising from his termination. The defendant corporation moved to compel arbitration, relying on an arbitration provision in the parties' "Non-Competition, Non-Solicitation, Confidentiality and Assignment Agreement" (the "Non-Competition Agreement"). Id. at *1. The Non-Competition Agreement provided: "Any and all disputes or controversies whether of law or fact of any nature whatsoever arising from or respecting this Agreement shall be decided by arbitration . . . ." The court denied the motion to compel arbitration, noting that the plaintiff had a separate Employment Agreement, which set forth the terms of the plaintiff's employment and termination. The court found that plaintiff's claims were not covered by the Non-Competition Agreement. As such, the court held that the arbitration provision in that agreement did not apply to plaintiff's claims.

The court's reasoning in Zuber is not applicable here. First, the plaintiff in Zuber entered into a separate

9

"Employment Agreement" that addressed grounds for termination not mentioned in the Non-Competition Agreement and specifically provided that disputes concerning the plaintiff's termination could be heard in West Virginia state court.  Id. at *3.  Here, to the extent Hall's offer letter and signed acknowledgement could constitute an employment agreement with Sig Sauer, they both include nearly identical language regarding termination of employment to that contained in Section 7 of the Agreement.  In addition, to the extent those documents could constitute an employment agreement, that agreement does not include a provision that allows Hall to challenge her termination in court or otherwise undermine the arbitration clause in the Agreement.

Second, the provision in the Non-Competition Agreement in Zuber applied only where the plaintiff's termination resulted from "the event of default or nonperformance by [plaintiff] of any of the provisions in this Agreement."  Id. at *2.  And, the defendant in Zuber conceded that plaintiff's termination did not arise from such an event.  Here, however, Section 7 provides that Sig Sauer can terminate Hall "at any time, with or without cause, for any lawful reason," and thereby governs the standard for termination of employment generally.

For these reasons, Zuber is inapplicable and Hall's claims are subject to the arbitration clause.

10

III. Request to Stay

Sig Sauer requests that the court compel Hall to arbitrate and stay this matter during the arbitration. Given that the issues raised in this action are subject to the arbitration clause in the Agreement, however, there appears to be no reason for the court to retain jurisdiction and stay the action. Therefore, the parties shall have 14 days to show cause why this action should not be dismissed in light of the court's order. Failure to show cause will result in the dismissal of this action.

**CONCLUSION**

For the foregoing reasons, Sig Sauer's motion to compel arbitration and stay proceedings (doc. no. 4) is granted to the extent it seeks to compel Hall to arbitrate the claims she asserts in this action, but denied to the extent it seeks a stay of the proceedings during the pendency of the arbitration. **On or before January 25, 2017,** the parties shall show cause why this action should not be dismissed in light of this order. Failure to show cause will result in dismissal of the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 11, 2018
cc: Counsel of Record